UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES CROSS,
                Petitioner,

v.                                        Case No. 2:12-CV-408
                                        HON. R. ALLAN EDGAR

JEFF WOODS,
                Respondent.
_____/

## OPINION & ORDER

Petitioner filed this *pro se* § 2254 petition for writ of habeas corpus challenging the validity of his state court convictions for violations of his Fifth, Sixth, and Fourteenth Amendment rights.  On November 3, 2009, Petitioner was convicted by a jury of felony murder (MICH. COMP. LAWS § 750.316(1)(b)), assault with intent to rob while armed (§ 750.89), and felony firearm (§ 750.227(b)).  Docket # 11 at 1-2.  Petitioner was sentenced to life in prison without parole on the murder conviction, fifty to ninety-five years for assault with intent to rob while armed, and five years for the firearm conviction.  Docket # 11 at 1.  Petitioner remains in the custody of the Michigan Department of Corrections.

After his conviction, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals raising the same four claims currently before this court. Petitioner's appeal was denied and his conviction affirmed on June 23, 2011.  Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, and this application was denied on November 21, 2011.  Petitioner did not appeal to the United States Supreme Court or seek collateral review before the trial court.  Instead, he filed a habeas petition in this Court on March 27, 2013.  Docket # 11.

Petitioner maintains that his convictions were based on violations of his state and federal rights. Petitioner sets forth the following claims for relief:

I.  Was enormous prosecution resources put into a 2009 trial of a 2007 homicide and on the day of trial defense counsel made an oral request for adjournment of the trial for gunpowder residue testing which is the linchpin of the defense theory on the case, it was (1) error to deny adjournment of the trial and (2) ineffective assistance of counsel for failing to properly investigate the absence of gunpowder residue on James Cross's clothing. U.S. Const, Amends. V, VI, and XIV?

II. Did improper evidence (A) that defendant has been in prison and (B) of bloody photographs of deceased deprived defendan[t] of Due Process of law requiring a new trial?

III.  Where the prosecutor gave a key witness use immunity at the investigative subpoena, it was (1) prosecutorial misconduct to fail to inform the jury of that deal and (2) constitutionally ineffective assistance of counsel t[o] fail to cross-examine the witness regarding that deal?

IV.  Did the defendant counsel's failure to properly investigate, file proper motions, make proper objections, and aproper [sic] record was constitutionally ineffective assistance of counsel?[1]

V. Whether defendant was denied effective assistance of appellate counsel on his appeal of right?

VI.  Whether defendant is entitled to relief where he is "actually innocent" of the offenses underlying his state court conviction, and but for constitutional errors in the trial mechanism, no reasonable juror would have voted to convict him beyond a reasonable doubt?

VII.  Defendant's conviction for aiding and abiding [sic] armed robbery and assault [with intent] to rob while armed must be vacated

---

[1]Petitioner raised this fourth claim for ineffective assistance of counsel; however, this claim simply reiterates the three prior ineffective assistance of counsel claims raised in claims I, II, and III.  Therefore, this Court will consider Petitioner's ineffective assistance of counsel claims as they arise in Claims I, II, and II, and not separately in a fourth claim.  Moreover, Petitioner's fifth through thirteenth claims were raised in his brief, not responded to by Respondent, and only raised before in the Michigan Supreme Court.  *See* Docket # 3 at 11-12. Regardless, this Court will address those issues as well.

on double jeopardy grounds.

VIII.  Defendant is entitled to relief where his mandatory life-sentence for first degree murder is is [sic] an unconstitutional "determinate sentence" and constitutes cruel or unusual punishment.

IX.  Defendant is entitled to relief where the clerk administered a defendant oath to the jurors at defendant's trial, which constituted clear error and require[s] reversal and vacation of convictions.

X.  Whether defendant['s] conviction warrants vacation where the prosecution constructively amended the indictment through her arguments and case in chief to the jury and which denied the right to notice to the added charge which changed from robbery theory to an ambush theory.

XI.  Whether defendant was denied VI Amendment right to effective assistance of trial counsel.

XII.  Whether defendant is entitled to reversal where the trial court gave a[n] incomplete jury instruction on how the jury should judge defendant's statement as evidence against him, which denied a fair trial.

XIII.  Defendant is entitled to relief from conviction of his murder conviction under MCL 750.316, where the Michigan Supreme Court in People v Arron changed the meaning of murder which represents a[n] unconstitutional intrusion into a legislative function and violated defendant's right to notice under the 5th and 14th Amendments of the US. Const. And under Const. 1963 Art. 1 § 20 where the statute violates the title-object-clause and repugnant to Mich Const. 1963, Art 4 § 24.

Docket # 3 at 11-12; Docket # 11-1 at 1.  After filing his § 2254 claim in this Court, Respondent

filed an Answer in opposition to Petitioner's request for a writ of habeas corpus.  Docket # 18.

The matter is now ready for a decision.

## I.

Petitioner filed this petition after the effective date of the Antiterrorism and

Effective Death Penalty Act of 1996. PUB. L. 104-132, 110 STAT. 1214 (AEDPA); *Bell v. Cone*,

535 U.S. 685, 693-94 (2002) (noting that AEDPA prevents federal habeas "retrials" and ensures

state convictions are made under state law). 28 U.S.C. § 2254(d) provides that any habeas

application by a person in state custody shall not be granted in regards to any claim that has

previously been adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

This Court may only consider "clearly established holdings" of the Supreme

Court, not lower federal courts, in analyzing a petitioner's claim under § 2254. *Williams v.

Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). A

decision of the state court may only be overturned if: (1) it applies a rule contradicting Supreme

Court governing law, (2) it contradicts a set of facts materially indistinguishable from a Supreme

Court decision, (3) it unreasonably applies correct Supreme Court precedent to the facts of the

case, (4) it unreasonably extends Supreme Court legal principles where it should not apply, or (5)

it unreasonably refuses to extend Supreme Court legal principle where it should apply. *Bailey*,

271 F.3d at 655; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable"

simply because that court decides, in its own judgment, that the relevant state decision applied

federal law incorrectly. *Williams*, 529 U.S. at 410-11 (noting that it must instead determine if the

state court's application of clearly established federal law was "objectively unreasonable"). This Court defers to state court decisions when the state court addressed the merits of petitioner's claim. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *see Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (allowing review of habeas application *de novo* when state court clearly did not reach the question). When applying AEDPA to state factual findings, factual issues by state courts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429.

After applying the standards under AEDPA to Petitioner's case, this Court concludes that Petitioner has not provided clear and convincing evidence that the state court improperly applied clearly established federal law to the facts of Petitioner's case.

## II.

Petitioner argues that this Court should grant him a new trial because of numerous errors by the court, the prosecution, and his counsel during Petitioner's jury trial. The Court reviews all of Petitioner's claims and sub-claims individually.

### A. Claim I: Motion to Adjourn and Ineffective Assistance of Counsel

Petitioner's initial claims are that the court erred in denying his counsel's motion to adjourn the trial, which prevented Petitioner from presenting a defense, and that his counsel was ineffective for failing to investigate the gunpowder residue before his trial. Docket # 2-1 at 9-14.

#### i. Motion to Adjourn Trial

Petitioner claims that the court erred in denying his request for adjournment, which denied him his constitutional right to present a defense. On the day of Petitioner's trial,

his defense counsel motioned to adjourn the trial in order to test Petitioner's clothing for gunpowder residue, the results of which counsel and Petitioner believed might be exculpatory.

Petitioner's claim is procedurally defaulted.  When a state law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state court decision disposing of the claim, which in this case is the decision from the Michigan Court of Appeals on June 23, 2011.  *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

Here, when Petitioner motioned to adjourn trial and the trial court denied the motion, Petitioner did not claim that this denial would prevent him from being able to present a defense.  Docket # 22 at 7-8, 11-12.  As such, Petitioner did not raise or preserve this constitutional claim because he failed to raise it in the trial court. Therefore, the appellate court's review of such an "unpreserved constitutional claim is for plain error affecting the defendant's substantial rights." *Id.*  Accordingly, the Michigan Court of Appeals reviewed this claim for plain error.  Docket # 22 at 1.  Reviewing a claim for plain error is "an adequate and independent

state ground for foreclosing federal review." *Taylor*, 649 F.3d at 451 (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) ("Failure to comply with well-established and normally enforced procedural rules usually constitutes 'adequate and independent' state grounds.")).

   Because Petitioner failed to preserve this claim in the trial court when he could have, Petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice in order for this Court to review Petitioner's procedurally defaulted claims. *See House v. Bell*, 547 U.S. 518, 536 (2006).  The miscarriage-of-justice exception can only be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

   Petitioner has not shown that either exception to the procedural default rule applies to his constitutional right to present a defense claim.  Petitioner does not argue cause or demonstrate actual prejudice for his failure to comply with state procedural rules.  Furthermore, Petitioner has not shown that a fundamental miscarriage of justice would result upon a lack of federal habeas review of this claim.  While Petitioner believes that he was unable to demonstrate his innocence without the results of the gunpowder test, Petitioner has not shown that this particular evidence would have made all reasonable jurors unable to find Petitioner guilty beyond

a reasonable doubt.  *Schlup*, 513 U.S. at 327.  Thus, this Court denies Petitioner's first claim.

However, even if Petitioner's claim that he was unable to present a defense was not procedurally defaulted, this claim would fail on the merits.  "The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel."  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).  "Denial of a continuance rises to the level of a constitutional violation only when there is 'an unreasoning [sic] and arbitrary'" insistence that the hearings proceed despite a justifiable request for a delay.  *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004) (citing *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)); *see also Ungar*, 376 U.S. at 589, 591.  Some of the factors to consider in determining whether a denial of a continuance was "so arbitrary" that it constitutes an abuse of discretion are: "the length of delay; previous continuances; inconvenience to litigants, witnesses, counsel, and the court; whether the delay is purposeful or caused by the accused; the availability of other competent counsel; the complexity of the case; and whether denying the continuance will lead to identifiable prejudice."  *Seaton v. Jabe*, No. 91-1903, 1993 WL 1291, at *5 (6th Cir. Jan. 5, 1993) (citing *Wilson v. Mintzes*, 761 F.2d 275, 281 (6th Cir. 1985)).

The Michigan Court of Appeals provided a detailed and reasoned explanation, consistent with federal law, when it denied Petitioner's claim:

> Cross initially contends that the trial court erred and deprived him of his constitutional right to present a defense when it denied his request for an adjournment of trial to conduct gunshot residue testing.  We review a trial court's decision to deny a motion for an adjournment for an abuse of discretion.  We review unpreserved constitutional claims for plain error affecting defendant's substantial rights.

-8-

"[A] request for an adjournment must be by motion or stipulation made in writing or orally in open court based on good cause." A trial court may grant an adjournment based on the "unavailability of . . . evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the . . . evidence." The denial of an adjournment by the trial court does not constitute "grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion."

At the outset, we note that Cross failed to demonstrate the requisite "diligent efforts" to obtain testing for gunshot residue. The record indicates that evidence consisting of his clothing and hand swabs were available for testing for a two year period since they were secured in 2007 and trial did not occur until 2009. Any implication by Cross that the prosecution failed to provide this as exculpatory evidence is unavailing as the prosecution was not required to test the evidence on his behalf.

Cross also fails to demonstrate the requisite showing of "good cause" to support his request for an adjournment as it did not involve the production of material evidence. Expert testimony showed that the results obtained from gunshot residue testing do not necessarily or incontrovertibly establish whether a person discharged a firearm. In addition, whether Cross discharged a firearm during the commission of this crime was immaterial as the prosecution's theory of the case was that Cross aided and abetted the armed robbery, not that he fired the fatal shot. As a result, Cross could be convicted of the charged crimes regardless of the absence of any evidence of gunshot residue on his hands or clothing.

Similarly, we reject Cross' contention that the refusal of the trial court to grant an adjournment to permit him to procure gunshot residue testing deprived him of his constitutional right to present a defense. We do not dispute that a defendant is afforded a constitutional right to present a defense. But, when a defendant is able to present his theory of the case through other evidence, evidentiary errors do not necessarily rise to the level of a constitutional error. Further, the right to present a defense is not deemed to be absolute as a defendant is still required to comply with "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." As such, a defendant's right to present a defense "extends only to relevant and admissible evidence." In this instance, the failure to present the results of

> gunshot residue testing did not preclude Cross' claim that he was not
> the shooter.  The absence of this evidence was arguably beneficial to
> Cross as it could not serve to contradict his theory of the case
> regarding his lack of involvement or participation.  Further, Cross
> was not denied his constitutional right to present a defense given his
> lack of compliance with established rules of procedure necessitating
> the demonstration of "good cause" or "diligent efforts" to support his
> request for an adjournment, coupled with the limited relevance of the
> absence of gunshot residue on his person or clothing.

Docket # 33 at 1-3 (citations omitted).  The appellate court's analysis of Petitioner's claim is

thorough and complete, and it does not unreasonably apply or contradict federal law.  Here, the

denial of Petitioner's motion to adjourn was not so arbitrary that it constitutes an abuse of

discretion.  *Burton*, 391 F.3d at 772; *Seaton*, 1993 WL 1291, at *5.  Thus, this Court denies

Petitioner's claim that the trial court erred in denying his motion to adjourn trial in order to

obtain gunpowder residue tests to further his defense.

### ii.  Ineffective Assistance of Trial Counsel

In the alternative, Petitioner claims that his trial counsel was ineffective for not

having his clothes tested for gunpowder residue during the two year pendency of his case before

the jury trial.  To establish a claim of ineffective assistance of counsel, Petitioner must prove:  (1)

that counsel's performance fell below an objective standard of reasonableness; and (2) that

counsel's deficient performance prejudiced the defendant resulting in an unreliable or

fundamentally unfair outcome.  *Strickland v. Washington*, 466 U.S. 668, 688-90, 691-92 (1984).

A court considering a claim of ineffective assistance must "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

The defendant bears the burden of overcoming the presumption that the challenged action might

be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see*

*also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The Michigan Court of Appeals reviewed and denied this claim in its 2011 decision:

> Finally, Cross alleges ineffective assistance of counsel for failing (1) to procure testing of the evidence for gunshot residue . . . . To prevail on his claim of ineffective assistance of counsel[,] Cross must meet the two-part test elucidated by the United States Supreme Court, demonstrating that his counsel's performance "fell below an objective standard of reasonableness" under prevailing professional norms and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

> With regard to Cross' claim of ineffective assistance of counsel for failing to secure testing for gunshot residue, we note that the lower court record is devoid of any evidence that such testing would have established his innocence. Expert testimony indicated that gunshot residue testing could not conclusively establish that Cross did not discharge a weapon. Further, because the prosecutor's theory of the case was premised on Cross' role as an aider and abettor, his conviction did not hinge on evidence that he actually fired the fatal shot but merely his presence and furtherance of the criminal activity that resulted in the death.

Docket # 33 at 6 (citations omitted). The Michigan Court of Appeals properly applied federal law to the facts of Petitioner's case. Because potential evidence from the gunshot powder would not have been exculpatory or material to Petitioner's case given the prosecutor's theory of the

case, his counsel did not perform deficiently in failing to request that the test be done before his trial date.  As such, Petitioner's ineffective assistance of counsel claim fails.

### B.  Claim II: Prior Prison Time and Photographs

Petitioner next claims (1) that the prosecutor improperly elicited testimony that Petitioner was previously imprisoned and, (2) that prejudicial photographs were improperly admitted into evidence.  Docket # 3-1 at 16-18.  To the extent that Petitioner claims that these two events constitute evidentiary errors, these claims are not cognizable on habeas review.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.), *cert. denied*, 124 S. Ct. 345 (2003).  "[C]ourts have defined the category of infractions that violate fundamental fairness very narrowly."  *Bugh*, 329 F.3d at 512 (internal quotations and citations omitted).

In the alternative, if Petitioner is alleging prosecutorial misconduct in regard to

these two claims, these claims are procedurally defaulted.  During Petitioner's trial, he failed to object to both the testimony pertaining to his prior imprisonment as well as the gruesome photographs.  As a result, the Michigan Court of Appeals reviewed this claim for plain error. Docket # 33 at 4.  As noted above, reviewing a claim for plain error is an independent and adequate ground that forecloses federal review.  *Taylor*, 649 F.3d at 451.  Moreover, Petitioner does not argue cause or demonstrate actual prejudice for his failure to comply with state procedural rules.  Similarly, Petitioner has not shown that a fundamental miscarriage of justice would result upon a lack of federal habeas review of this claim.  As a result, his prosecutorial misconduct claims are procedurally defaulted.

Even if Petitioner's two claims, construed to be prosecutorial misconduct claims, were not procedurally defaulted, these claims would fail on the merits as well.

### i. Previous Incarceration Testimony

Petitioner makes a claim of prosecutorial misconduct based on the prosecutor eliciting testimony pertaining to his previous incarceration.  Docket # 3-1 at 16-17.  In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed

-13-

misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).

The court also must consider the strength of the overall proof establishing guilt, whether the

conduct was objected to by counsel and whether a curative instruction was given by the court.

*See id.* at 12-13;  *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United

States*, 295 U.S. 78, 84-85 (1935).

       The Michigan Court of Appeals considered this claim, and denied it, in its 2011

decision:

> Cross also argues that he was unduly prejudiced by the prosecutor's
> improper elicitation of testimony from a witness indicating his
> previous incarceration.  Because Cross failed to object to the alleged
> misconduct, this Court reviews for plain error affecting his substantial
> rights.  Testimony referencing a defendant's previous incarceration
> is generally deemed to be inadmissible, because of "[t]he danger . . .
> that the jury 'will misuse prior conviction evidence by focusing on the
> defendant's general bad character . . . ."  While a prosecutor's
> intentional elicitation of testimony regarding a defendant's previous
> incarceration constitutes error, "an isolated or inadvertent reference
> to a defendant's prior criminal activities will not result in reversible
> prejudice."  In this instance, the witness' remark constituted "an
> unresponsive, volunteered answer to a proper question" by the
> prosecutor.  As Cross failed to object to this testimony at trial, we
> need not even address this unpreserved issue unless a curative
> instruction would not have eliminated the prejudicial impact or our
> failure to address the issue would result in a miscarriage of justice.
> The very brief and unsolicited reference by the witness to Cross
> having been in prison and in trouble with police when weighed
> against the strong evidence of his guilt was not so prejudicial that it
> denied Cross a fair trial.

Docket # 33 at 4 (citations omitted).  The appellate court's analysis of Petitioner's prosecutorial

misconduct claim regarding Petitioner's previous incarceration  is thorough and complete, and it

accurately applies federal law to the facts of Petitioner's case.  *See Parker v. Matthews*, 132 S.Ct.

2148, 2155 (2012); *Darden*, 477 U.S. at 181-82.  The prior conviction testimony that Petitioner

objects to was an "invited response," which is improper only if it has a significant negative effect on the trial as a whole. *See Darden*, 477 U.S. at 182. Given that there was overwhelming evidence against Petitioner at trial, as noted by the Michigan Court of Appeals, it is unlikely that the jury's verdict was heavily influenced by the fleeting comment that Petitioner had previously been incarcerated. *See id.* As such, Petitioner's prosecutorial misconduct claim pertaining to his prior incarceration fails.

### ii. Autopsy Photographs

Petitioner also argues that he was prejudiced when the prosecutor offered, and the trial court admitted, autopsy photographs into evidence. Docket # 3-1 at 17-18. Following the abovementioned authority regarding prosecutorial misconduct, the Michigan Court of Appeals reviewed this claim in its 2011 decision:

> Cross next asserts that the trial court erroneously admitted three autopsy photographs of the victim, which were more prejudicial than probative. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. "The decision to admit or exclude photographs is within the sole discretion of the trial court." A trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Evidence is not deemed to be unfairly prejudicial merely because it is damaging to a defendant's case. Rather, undue prejudice is defined as meaning "an undue tendency to move the tribunal to decide on an improper basis . . . an emotional one."
>
> We find that the trial court did not abuse its discretion when it admitted the autopsy photographs into evidence. As with any autopsy photographs, while graphic, the photographs did not have an undue tendency to influence the jury to decide the case on an improper basis. The pathologist referred to the photographs during his testimony to explain the nature and extent of the victim's injuries. Such evidence was probative to help establish the intent element for a robbery and by assisting the jury in determining whether the victim was the aggressor or the target in the robbery. We also reject Cross'

-15-

> contention that the autopsy photographs were inadmissible because
> the pathologist's testimony was sufficient to explain the cause of
> death, as photographs may be used to corroborate a witness's
> testimony and "are not excludible simply because a witness can orally
> testify about the information contained in the photographs."

Docket # 33 at 3-4 (citations omitted).  The appellate court appropriately applied federal law to

Petitioner's case.  Again, looking at the totality of the photographs on the trial as a whole, it is

clear that these pictures did not heavily influence the jury's decision to return a verdict of guilty

given the other evidence against Petitioner at trial.  *See Darden*, 477 U.S. at 181-82.  As such, his

claim of prosecutorial misconduct pertaining to the autopsy pictures introduced into evidence is

denied.

### C.  Claim III: Witness Plea Agreement

Next, Petitioner makes another claim of prosecutorial misconduct and ineffective

assistance of counsel regarding the failure to disclose a plea agreement with one of the

prosecution's witnesses.

### i.  Prosecutorial Misconduct

Following the abovementioned authority pertaining to claims of prosecutorial

misconduct, the Michigan Court of Appeals reviewed Petitioner's claim on the merits:

> Cross further contends the prosecutor engaged in misconduct by
> failing to disclose to defense counsel and the jury that a witness,
> Jermario Phillips, was provided use immunity in exchange for his
> testimony.  "Where an accomplice or co-conspirator has been granted
> immunity or other leniency to secure his testimony, it is incumbent
> upon the prosecutor . . . to disclose such fact to the jury upon request
> of defense counsel."   A prosecutor is required to disclose upon
> request "any plea agreement, grant of immunity, or other agreement
> for testimony in connection with the case."  Specifically:
>
> > Due to the undeniable relevance of evidence of a

-16-

witness' motivation for testifying, the prosecutor must, upon request of defense counsel, disclose to the jury "the fact that immunity or a plea to a reduced charge has been granted to the testifying accomplice [or coconspirator]." Defendant is "entitled to have the jury consider any fact which might have influenced an informant's testimony." The disclosure requirement may be considered satisfied where the "jury [is] made well aware" of such facts "by means of . . . thorough and probing cross-examination by defense counsel."

At the outset, we note that the transcript selections referenced by Cross in the brief submitted to this Court form the witness' investigative subpoena testimony discussing the grant of use immunity are not part of the lower court record and, thus, comprise an improper expansion of the record on appeal. Contrary to Cross' assertion that the prosecutor failed to inform defense counsel of the grant of use immunity for this witness, the lower court record demonstrates that his attorney had a copy of and referenced testimony by this witness from the investigative subpoena hearing during his cross-examination wherein he attempted to impeach Phillips through the use of prior inconsistent statements. We also note that the testimony provided by Phillips was generally supported by other witnesses during trial. "[A] new trial is generally not required where the testimony of the witness is corroborated by other testimony or where the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable."

Addressing Cross' contention that the jury was not informed of the immunity agreement, we concur that a prosecutor does owe a duty to a defendant to disclose the existence and details of such an agreement. Requiring disclosure permits a trier of fact to evaluate the credibility of a witness within the context of its knowledge regarding the existence of a possible motive for the witness to fabricate testimony. First, in this instance, there is no evidence that defense counsel requested the jury be informed of the existence of an immunity agreement with this witness. Second, even if the prosecutor suppressed information regarding the existence of the immunity agreement, reversal is not warranted unless "the suppressed evidence might have affected the outcome of the trial." Based on the existence of corroborating testimony by other witnesses and evidence, Cross is unable to demonstrate that the failure of the prosecutor to

-17-

> inform the jury of the immunity agreement impacted the outcome of
> trial.

Docket # 33 at 4-6 (citations omitted).  The appellate court did not unreasonably apply clearly

established Supreme Court precedent to the facts of Petitioner's case, nor did it apply any rules

that contradict Supreme Court governing law.  Jamario Phillips' testimony was supported by

other evidence at trial.  Moreover, he had little incentive to lie since his use immunity agreement

only prevented him from being criminally charged based on his testimony.  *New Jersey v.

Portash*, 440 U.S. 450, 457, 459-60 (1979); *see Kastigar v. United States*, 406 U.S. 441, 453

(1972).   Thus, the non-disclosure of the use immunity agreement in this case was not improper.

Overall, for the reasons set forth by this Court and the Michigan Court of Appeals,

this Court denies Petitioner's claims of prosecutorial misconduct regarding Jamario Phillips' use

immunity agreement.

### ii.  Ineffective Assistance of Counsel

Petitioner claims, in the alternative, that his counsel was ineffective for not cross-

examining Jamario Phillips about his use immunity agreement with the prosecution.  The

Michigan Court of Appeals also evaluated this ineffective assistance of counsel claim:

> To prevail on his claim of ineffective assistance of counsel Cross
> must meet the two-part test elucidated by the United States Supreme
> Court, demonstrating that his counsel's performance "fell below an
> objective standard of reasonableness" under prevailing professional
> norms and "that there is a reasonable probability that but for
> counsel's unprofessional errors, the result of the proceeding would
> have been different."
> . . .
> Cross also contends that trial counsel was ineffective for failing to
> assure disclosure of the use immunity agreement between the
> prosecutor and Phillips.  At the outset, Cross has failed to establish
> the factual predicate for this claim as the lower court record is devoid

-18-

of any indication that the prosecutor granted Phillips use immunity. Because Phillips' testimony was corroborated by other witnesses, evidence pertaining to the alleged immunity agreement would merely have provided an additional means for defense counsel to try to impeach this witness.  Given the strong evidence that Cross was a participant in the crimes charged, he is unable to demonstrate a reasonable probability that the outcome of his trial would have been different notwithstanding defense counsel's alleged errors.

Docket # 33 at 6 (citations omitted).  The appellate court did not unreasonably apply federal law to the facts of Petitioner's case, nor did it apply law that contradicts federal law in its analysis of this claim.  *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold.").  "Where, as here, trial counsel conducts a thorough and meaningful cross-examination of a witness, counsel's failure to employ a trial strategy that, in hindsight, might have been more effective does not constitute unreasonable performance for purposes of an ineffective assistance of counsel claim." *Millender v. Adams*, 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002); *see Towns v. Smith*, 395 F.3d 251 (6th Cir. 2005) (noting there is a strong presumption that an attorney's performance was sound trial strategy).

Moreover, Petitioner has not shown that he was prejudiced from his attorney's alleged error.  *Strickland*, 466 U.S. at 692 (meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.").  As the Michigan Court of Appeals noted, there was strong evidence indicating that Petitioner participated in the crimes for which he was charged.  Since Petitioner has not shown that the outcome of his trial would have been different if his trial attorney had cross-examined Jamario

Phillips about his use immunity agreement with the prosecution, Petitioner's ineffective assistance of counsel claim fails.

### D. Claims V-XIII: Exhaustion

Petitioner's remaining nine claims that are before this Court were not presented to the Michigan Court of Appeals in his appeal as of right.  Instead, these claims appear to be first presented to the Michigan Supreme Court, which denied Petitioner's request for relief on November 21, 2011, because the court was "not persuaded that the questions presented should be reviewed by [that] Court."  Docket # 34 at 1.  As of June 18, 2013, according to the state docket sheet, Petitioner has not filed a motion for relief from judgment in the state courts raising these nine claims.

Before this Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

-20-

The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138-39 (6th Cir. 1970). "[A] state may not be considered to have waived the defense of nonexhaustion unless it does so expressly and through counsel." *Rockwell v. Yukins*, 217 F.3d 421, 423-24 (6th Cir. 2000).

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). It appears that Petitioner has at least one available procedure by which to raise the issues he has presented in this application. He may file a motion for relief from judgment under M.C.R. 6.500 *et. seq*. Therefore, the Court concludes that he has at least one available state remedy for claims five through thirteen, which means he has not exhausted these nine claims.

III.

If Petitioner should choose to appeal this action, the undersigned denies a certificate of appealability as to each issue raised by Petitioner in his application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the

undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of Petitioner's first through fourth claims was debatable or wrong. Therefore, the undersigned denies Petitioner a certificate of appealability as to claims one through four.

The undersigned also denies Petitioner's application on the procedural grounds of exhaustion. Under *Slack*, 529 U.S. at 484, when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id.* The undersigned concludes that reasonable jurists could not debate that Petitioner's claims five through thirteen were properly dismissed on the procedural grounds of exhaustion. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Therefore, the undersigned denies Petitioner a certificate of appealability as to claims five through thirteen.

For the same reasons the Court dismissed this action, the Court will certify that any appeal of any of the thirteen claims before this Court by Petitioner from the Court's decision

and judgment would be frivolous and not taken in good faith, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24.  Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is hereby **DENIED**.

In summary, Petitioner's first four claims presented to this Court are **DISMISSED with PREJUDICE**.  Docket # 1.  Petitioner's fifth through thirteenth claims are **DISMISSED without PREJUDICE** for the purposes of exhaustion.  Docket # 3.  A judgment consistent with this Opinion and Order will be entered.

**SO ORDERED**.

_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE

Dated: 9/1/2015